IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 2000 Session

## JOHN B. TIGRETT v. UNION PLANTERS BANK

**A Direct Appeal from the Circuit Court for Shelby County
No. 77595 T.D.     The Honorable Robert L. Childers, Judge**

_____

**No. W1999-01771-COA-R3-CV - Filed August 24, 2000**

_____

Bank, as escrow agent, was authorized by chancery court in a declaratory judgment suit to sell certain stock held in escrow. The stock was sold pursuant to a tender offer at the behest of the secured parties over the objection of the stock owner. Bank and the secured parties asserted in the declaratory judgment suit that there was no readily available market for the stock. The secured parties contended that the tender offer should be accepted. The chancery court's order authorizing sale was affirmed in the Court of Appeals, and the Supreme Court denied the application for permission to appeal. Subsequently, the stock owner filed the instant suit in circuit court against Bank alleging that Bank misrepresented the facts to the chancery court, the Court of Appeals, and the Supreme Court and committed a fraud on those courts. The suit seeks both compensatory and punitive damages. Bank's attorney served a motion for sanctions on plaintiff's attorney in the circuit court suit for alleged violation of Tenn.R.Civ.P. 11. The circuit court granted Bank summary judgment, and the dismissal was affirmed by the Court of Appeals and application for permission to appeal to the Supreme Court was denied. The trial court denied Bank's motion for sanction, and Bank has appealed.

**Tenn.R.Civ.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and
Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Mark Vorder-Bruegge, Jr., Memphis, For Appellant, Union Planters Bank

Richard Glassman, Memphis, For Appellee, John Burton Tigrett

### OPINION

This appeal involves a claim for Tenn.R.Civ.P. 11 sanctions. Defendant, Union Planters Bank (Bank), appeals the trial court's order denying its motion for sanctions against plaintiff's lawyers, Tim Edwards, and Glassman, Jeter, Edwards and Wade, P.C. (Attorneys).

This suit, which brought about Bank's motion for sanctions, was dismissed by the trial court on summary judgment. This Court affirmed the trial court, and the Supreme Court denied John Burton Tigrett's application for permission to appeal. *See Tigrett v. Union Planters Nat'l Bank*, 973 S.W.2d 208 (Tenn. Ct. App. 1997). Since our decision on the motions of sanctions is dependent upon the facts and law as established in our prior Opinion, we attach the prior Opinion hereto as an addendum, and it is incorporated herein by reference. As this Court noted, "The crux of Tigrett's complaint is that Union Planters, by virtue of its false and fraudulent misrepresentations to the court, procured the order authorizing the sale of the GOI stock." *Id.* at 211.

Bank asserts that Tigrett's complaint is frivolous and has absolutely no basis in the law. Bank argues that it was merely a stake holder and was seeking instructions as to whether the stock should be disposed of pursuant to the tender offer as demanded by the city and county. Bank also argues that the representations made to the court were true and that it merely furnished the court with information it had acquired concerning the saleability of the stock and its value.

On the other hand, Attorneys assert that there was proof that the stock was readily marketable and that Bank's assertions to the contrary were potentially misleading and only made for the purpose of inducing the court to order the disposition of the stock pursuant to the tender offer. Attorneys argue that they were asserting a legal theory that was a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . ." Tenn.R.Civ.P. 11.02 (2). They also contend that a cause of action should exist against a party who grossly and intentionally misrepresents facts to a trial court or an appellate court and that they made this argument with the intention of establishing new law in Tennessee.

The trial court denied Bank's motion for sanctions, and Bank has appealed. The only issue for review is whether the trial court erred in denying the motion for sanctions.

Tenn.R.Civ.P. 11 requires all pleadings of a party represented by an attorney to be signed by at least one attorney of record in that attorney's individual name. Rule 11.02 provides, as pertinent to our inquiry:

> **11.02 Representations to Court.** - By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Tenn.R.Civ.P. 11.03 states in pertinent part:

**11.03 Sanctions**  If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

(1) How Initiated.

(a) *By Motion.*  A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

\*          \*          \*

(2) Nature of Sanction; Limitations.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted

-3-

for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*        *        *

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Rule 11 has been part of the Federal Rules of Civil Procedure since 1938, while Tennessee's version of Rule 11 became law in 1971. Tennessee's Rule 11 was not amended to conform to its federal counterpart until 1987. ***Con-Tech, Inc. v. Sparks***, 798 S.W.2d 250, 252 (Tenn. Ct. App. 1990). ***Andrews v. Bible***, 812 S.W.2d 284 (Tenn. 1991), appears to be the only Tennessee Supreme Court case dealing with Rule 11 sanctions. Because of the lack of Tennessee authorities on the subject, the Court looked to federal authorities for guidance. The Court said:

> The certification which results from the attorney's signature on a motion, pleading, or other document is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. Schwarzer, "Sanctions Under the New Federal Rule 11 – A Closer Look," 104 F.R.D. 181, 186 (1985). *See also*, Note, "the Intended Application Of Federal Rule of Civil Procedure 11: An End To The Empty Head, Pure Heart Defense," 41 Vand.L.Rev. 343, 361-62 (1988). A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive. ***Business Guides v. Chromatic Communications Ent.,*** _____ U.S. _____, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991); ***Cooter & Gell v. Hart Marx Corp.***, 496 U.S. _____, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the [trial judge] that this document is to be taken seriously." ***Business Guides,*** 111 S.Ct. at 930. The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. "The message thereby conveyed to the attorney, is that this is not a team effort but in the last analysis, *yours alone*, precisely the point of Rule 11." ***Pavelic & LeFlore v. Marvel Entertainment Group,*** 493 U.S. 120, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989).

*        *        *

> The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances, ***Business Guides,*** 111 S.Ct. at 933, and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed. 104 F.R.D. at 189. The Advisory Committee notes to the federal version of Rule 11 state that "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]." ***Cruz v. Savage***, 896 F.2d 626, 631 (1st Cir. 1990).

812 S.W.2d at 287-288 (emphasis in original).

***Bible*** was decided before Rule 11 of the Federal Rules of Civil Procedure was amended in 1993. Tennessee amended its version of Rule 11 in 1995 to track the federal rule as amended in 1993. The rules now are identical and provide, among other things, a "safe harbor" protection period, the nonmandatory requirement for sanctions, and the requirement that if the sanctions are imposed, the conduct requiring sanctions must be described. As to the extension, modification, or reversal of existing law, the rule now requires that the signing individual certify that the document is warranted by a "nonfrivolous" argument, rather than the "good faith" argument of the pre-amendment rule. The 1993 Advisory Committee Notes provide some guidance as to the meaning of "nonfrivolous":

> This establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account determining whether paragraph (2) has been violated.

Appellate courts review Rule 11 under the "abuse of discretion" and "deferential" standard. ***Krug v. Krug***, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992); ***Cooter and Gell v. Hartmarx Corp.***, 496 U.S. 384, 405 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990); ***Ridder v. Springfield***, 109 F.3d 288, 293 (6th Cir. 1997). The test for imposition of Rule 11 sanctions remains "whether the individual's conduct was reasonable under the circumstances." ***See Union Planters Bank v. L&J Development Co., Inc.***, 115 F.3d 378, 384 (6th Cir. 1997).

As noted in this Court's Opinion attached as an addendum hereto, in the underlying litigation Tigrett filed an amended and supplemental counter-claim against the bank alleging that the bank "had a fiduciary duty to give the parties to the agreement true and accurate information regarding the available market and the potential sales price of the GOI stock, and that Union Planters made a false representation concerning difficulty in obtaining quotes on the stock." It is also averred that Bank made false representations to the court that the stock was not saleable, that there was no market for the stock, and that the tender offer should be accepted.

There is no dispute that the underlying chancery court action was dismissed with prejudice by consent except for the counter-claim, which was dismissed without prejudice to the refiling of same. The complaint in the instant case was filed less than a month after the dismissal of the underlying action. It appears that the attorneys are asserting that since they had the unquestioned right in the underlying action to present their claims against the bank, the consent dismissal without prejudice to refiling the suit allowed them to litigate the same issues in the independent action seasonably filed. While this is a novel and somewhat tenuous theory and was implicitly rejected by this Court on appeal, we feel that it falls short of being frivolous. Under these circumstances, we cannot say that the trial court abused its discretion in refusing to award sanctions in this case.

Accordingly, the order of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Union Planters National Bank.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

973 S.W.2d 208, Tigrett v. Union Planters Nat. Bank, (Tenn.App. 1997)

*208  973 S.W.2d 208

John Burton TIGRETT, Plaintiff-Appellant,
v.

UNION PLANTERS NATIONAL BANK, Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson
Oct. 31, 1997.
Application for Permission to Appeal
Denied by Supreme Court
May 26, 1998.

Developer's shareholder filed action against bank, asserting that bank used false and fraudulent misrepresentations to procure order from chancery court for sale of shareholder's stock held in escrow by bank to fund development project. The Circuit Court, Shelby County, Robert L. Childers, J., dismissed. Appeal was taken. The Court of Appeals, Crawford, P.J., W.S., held that action was improper collateral attack of chancery court's underlying order for stock sale after it had become final.

Affirmed and remanded.

1. JUDGMENT k509
   228 ----
   228XI    Collateral Attack
   228XI(B)    Grounds
   228k508        Misconduct of Party or Counsel
   228k509          In general.
Tenn.App. 1997.
   Shareholder's action against bank, asserting that bank used false and fraudulent misrepresentations to procure order from chancery court for sale of shareholder's stock held in escrow by bank, was improper collateral attack of chancery court's underlying order for stock sale after it had become final; shareholder merely made allegations of intrinsic fraud which could have been litigated in underlying chancery action and any subsequent appeal.

2. JUDGMENT k403
   228 ----
   228X    Equitable Relief
   228X(A)    Nature of Remedy and Grounds
   228k403      Nature and scope of remedy in general.
Tenn.App. 1997.
   Generally, a party may file an independent action to set aside a judgment only under unusual and exceptional circumstances and then only where no other remedy is available or adequate.

Richard Glassman, James F. Horner, Glassman, Jeter, Edwards & Wade, Memphis, for plaintiff-appellant.

Mark Vorder-Bruegge, Jr., Wyatt, Tarrant & Combs, Memphis, for defendant-appellee.

ADDENDUM

CRAWFORD, Presiding Judge, Western Section.

Plaintiff, John Burton Tigrett, appeals from the trial court's order dismissing plaintiff's complaint against defendant, Union Planters National Bank.

This case is another of the disputes spawned by the financial problems that plagued the construction of the Pyramid Arena in downtown Memphis. The dispute in this case arises out of an escrow account established as a requirement of the management contract between the developer Pyramid Management Authority, Inc. (PMA) and the City of Memphis and Shelby County which required PMA to fund an escrow account with not less than three million dollars in assets. Tigrett, a shareholder in PMA, arranged to fund a portion of the escrow account with 375,000 shares of General Oriental *209 Investment (GOI) stock. (FN1) Tigrett claims he is the constructive and beneficial owner of the GOI stock and asserts that because of this fact he is a third party beneficiary to the escrow agreement.

The escrow agreement dated July 14, 1989, names Union Planters as the escrow agent. The parties to the management contract for the Pyramid are the developer, PMA, and the city and county. The escrow agreement provides that the escrow agent as part of its duties was to make certain investigations or inquiries into the value and marketability of the GOI stock from time to time. The agreement also provides that at the expiration of its term, the escrowed property, if not otherwise disposed of pursuant to the terms of the agreement, would be returned to PMA.

On September 7, 1990, the escrow agreement was amended to provide for a stated value of the stock and a substitution of the escrowed stock with property having a more readily ascertainable value. The amendment states:

(2) Except as provided in paragraph (3), below, for purposes of establishing the market value of the shares of General Oriental Investments Limited ("GOI") currently held in escrow as required by Section (1)(c) of the Escrow Agreement, Lessee [City of Memphis and County of Shelby], having been provided with audited financial statements of GOI, has determined that the GOI shares have, and hereby instructs and authorizes the Escrow Agent [Union Planters] to use, a value of U.S. $7.85 per share for the period commencing with this date through a date which is the earlier of (i) January 2, 1991, or (ii) the date on which The Great American Pyramid Joint Venture, of which Manager [PMA] is a joint venture partner, secures its project financing of $55,000,000, or more, and receives its first draw from the proceeds therefrom (the "Fixed Valuation Period").

* * *

(5) Manager further covenants and agrees that on or before the termination of the Fixed Valuation Period, it will replace the shares of GOI, currently held as part of the Existing Collateral, with cash, letter of credit or marketable securities listed on the New York Stock Exchange; the American Stock Exchange; or listed on NASDAQ and for which the parties mutually agree are publicly quoted and traded on a sufficiently frequent basis so as to allow a market value to be routinely obtained.

ADDENDUM

By subsequent amendment, on January 10, 1991, the value of the stock was set at $10 per share, and the date in the fixed valuation period was changed to April 1, 1991. This amendment also provided for the relinquishment of 75,000 shares, reducing the escrowed number of GOI shares to 300,000.

On May 2, 1991, Union Planters filed a complaint of interpleader and for declaratory relief in the Shelby County Chancery Court tendering the GOI stock to the chancery court. The complaint names as defendants the city, the county, PMA, the president of PMA, Jovest Foundation, and Tigrett. Union Planters's complaint set out the details of the escrow agreement and the amendments to the escrow agreement setting out the stated value for the GOI stock. The complaint averred that pursuant to the amendment to the agreement, GOI stock was to be replaced with marketable securities by April 1, 1991, but that PMA had failed to comply with this requirement. The complaint further averred that Union Planters had been instructed by the city and county to sell the GOI stock, that PMA agreed that this should be done for the highest price possible, but that Tigrett demanded that Union Planters not sell the stock.

The record is not clear as to what responsive pleadings were filed to the complaint, but it appears that nothing was done concerning the petition until the fall of 1994 when Union Planters was notified of a tender offer for all of the outstanding shares of GOI stock. When Union Planters learned of the tender offer, it filed a motion with the chancery court for instructions on whether the stock should be sold pursuant to the tender *210 offer. Union Planters requested an expedited hearing because of the pending expiration of the tender offer. The motion avers that "GOI is a closely held foreign corporation whose stock is quoted in British pounds. It has been traded on the Vancouver stock exchange and in London but rarely trades." The motion merely requested instructions as to what the escrow agent should do in the face of the tender offer. The chancery court held a hearing at which Tigrett introduced proof that if the sale of the stock were made he would have an approximately $800,000 tax loss, and his objection to the sale of the stock was based upon his assertion that there was no triggering event in the escrow agreement that would authorize such a sale. The chancellor found that the terms of the agreement as amended required that "marketable securities" be placed in escrow in place of the GOI stock by April 1, 1991, and that this had not been done. The chancellor also noted that Tigrett had the opportunity, if he so desired, to make the replacement prior to any sale of the stock pursuant to the tender offer. Union Planters, through its attorneys, advised the court that it had been unable to find a ready market for the stock and that the escrow agreement had been amended to set a price of $10.00 per share for the stock because of the lack of a ready market. The chancellor found that the saleability of the GOI stock was somewhat questionable and that the tender offer should be accepted. Union Planters, as the escrow agent, was authorized and directed by the court to sell the stock pursuant to the tender offer. Tigrett sought a Rule 10 extraordinary appeal and a stay of the trial court's order, but the Court of Appeals denied the extraordinary appeal and the stay. Subsequently, the Supreme Court did likewise.

In this underlying litigation, although it is not entirely clear, it appears that the City of Memphis and Shelby County filed cross complaints against PMA, Shlenker, Tigrett, Jovest Foundation and Union Planters, and in turn Tigrett filed a counter complaint against the city and the county. Subsequently, in June, 1995, Tigrett was granted leave by the court to file an amended and

ADDENDUM

supplemental counter complaint against Union Planters. The counter complaint alleges in substance that Union Planters had a fiduciary duty to give the parties to the agreement true and accurate information regarding the available market and the potential sales price of the GOI stock, and that Union Planters made a false representation concerning difficulty in obtaining quotes on the stock. The complaint further avers that counsel for Union Planters made false representations to the trial court and later to the Court of Appeals at the time of the application for extraordinary appeal and stay. The alleged misrepresentations were that the stock was not saleable, there was no market for the stock, and that therefore the tender offer needed to be accepted as in the best interest of the parties. The complaint avers that because of the misrepresentations on the part of Union Planters, the trial court authorized and directed the sale of the stock pursuant to the tender offer. On March 22, 1996, the underlying action was dismissed with prejudice by consent order of dismissal as to all matters except the counter complaint of Tigrett against Union Planters which was dismissed without prejudice to the refiling of same.

On April 16, 1996, the complaint in the instant case was filed. The complaint sets out the background information concerning the escrow agreement, Union Planters appointment, and avers that Union Planters as part of its duties made investigations or inquiries into the value and marketability of the shares of stock and continued periodically to secure this information until about December, 1990. The complaint further avers that Union Planters learned that there was an available market for the stock and that it could be sold by Shearson Lehman Brothers for U.S. currency. The complaint also avers that information was received from William Woods, a stockbroker in London, concerning the value and trade ability of the stock. The complaint alleges that Union Planters had a fiduciary duty to give true and accurate information regarding the available market and potential sales price of the stock to the respective parties to the agreement and that it breached its duty. The complaint further alleges that in April of 1991, Union Planters represented that it had difficulty in obtaining bid quotes for the stock, and it was doubtful  *211  that they could sell the stock to cure a deficiency in the amount required by the escrow agreement. The complaint further alleges that in May of 1991, Union Planters filed a complaint requesting adjudication as to the rights and obligations of the parties to the escrow agreement as to the 300,000 shares of GOI stock. Then, in the fall of 1994, after Union Planters was notified of a tender offer, it filed a motion for instructions as to the sale of the stock pursuant to the tender offer. The complaint avers that the city, the county, and PMA relied upon the defendant's information and joined in the motion to sell the stock. The complaint further alleges that after the trial court ordered that the stock be sold pursuant to the tender offer, an application was made with the Court of Appeals for an extraordinary appeal and for a stay of the trial court's order. The appeal and stay were denied by the Court of Appeals and ultimately by the Supreme Court. The complaint avers that in the trial court and in the appellate court, Union Planters made willful misrepresentations to the courts that there was no market for the stock, that it was not saleable, that Union Planters attempted for a period of years unsuccessfully to locate a market for the stock, and that because of these misrepresentations the court ordered that the stock be sold pursuant to the tender offer, resulting in damages to Tigrett. Union Planters responded to the complaint with a motion to dismiss for failure to state a claim upon which relief can be granted. In support of the motion, Union Planters relied upon parts of the record in the underlying action. The court's order granting the motion and dismissing the action specifically relies upon this

ADDENDUM

extraneous material.  Accordingly, Union Planters's motion will be treated and disposed of as one for summary judgment.  Tenn.R.Civ.P. 12.02.

The only issue on appeal is whether the trial court erred in granting summary judgment.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Tenn.R.Civ.P. 56.03;  Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993);  Dunn v. Hackett, 833 S.W.2d 78, 80 (Tenn.App.1992).  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  Byrd, 847 S.W.2d at 210. When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof;  that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Id. at 210-11. In Byrd, the Tennessee Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate,   by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial.  [citations omitted].
In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

Id. at 211.  (emphasis in original).  Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. Byrd, 847 S.W.2d at 211 (citing Dunn, 833 S.W.2d at 80).   The crux of Tigrett's complaint is that Union Planters, by virtue of its false and fraudulent misrepresentations to the court, procured the order authorizing the sale of the GOI stock.

[1] Union Planters asserts several reasons to justify the trial court's dismissal of Tigrett's action, including that he cannot now collaterally attack the trial court's order authorizing and directing the sale of the stock.  Tigrett asserts, however, that because he filed a counterclaim in the underlying action which was dismissed without prejudice to refile, there was no litigation of the issues and thus they can now be litigated.  We must respectfully disagree.  Tigrett apparently loses sight of the fact that the alleged cause of his misery is the trial court's order authorizing and directing Union Planters to  *212  sell the stock.  The bank's interpleader action sought instruction and authority which was granted in the order.  Although Tigrett later filed a counterclaim in the underlying action seeking monetary relief, that relief could only be obtained if the order complained about was determined to be erroneous because of fraud or whatever reason.  Upon dismissal of the counterclaim, cross claims, and the principal complaint in the underlying action with prejudice, the order of the trial court authorizing and directing the sale of the stock became a final order.

We must bear in mind that Union Planters, in selling the stock, acted in compliance with the order of the chancery court directing the bank to make the sale.  Clearly, Union Planters was justified in

ADDENDUM

so acting. This justification is best expressed by a maxim applicable to the chancery court and its orders:

5. ... (He who does anything by command of the Judge will not be deemed to have acted from an improper motive, because it was necessary for him to obey). This rule protects a clerk who pays out money, or does any other act, by order of the Court. It protects the sheriff in the proper execution of the orders, decrees and process of the Court; and protects receivers, special commissioners and others, who do any act in pursuance of an order or decree of a Court. The party dissatisfied with any such order or decree must take the proper steps to have it suspended, corrected or reversed.

s 37(5) Gibsons' Suits in Chancery (Inman, 6th ed.)

Tigrett asserts that the chancery court order was obtained by virtue of the fraud and misrepresentation of Union Planters. These matters could have been litigated in the underlying chancery action and any subsequent appeal. In order for Tigrett to prevail, it is essential to prove that the chancery court order was erroneously entered and thus the instant action is a collateral attack on the chancery court order.

[2] Generally, a party may file an independent action to set aside a judgment only under unusual and exceptional circumstances and then only where no other remedy is available or adequate. Jerkins v. McKinney, 533 S.W.2d 275, 281 (Tenn.1976). In Schorr v. Schorr, C.A. No. 02A01-9409-CH-00217, 1996 WL 148613 (Tenn.App.W.S. Mar. 29, 1996), this Court said:

In an independent action to set aside a judgment on the basis of fraud, the complaining party must prove extrinsic, as opposed to intrinsic, fraud. New York Life Ins. Co. v. Nashville Trust Co., 200 Tenn. 513, 517-21, 292 S.W.2d 749, 751-53 (1956); Medlock v. Ferrari, 602 S.W.2d 241, 245-46 (Tenn.App.1979); Noll v. Chattanooga Co., 38 S.W. 287, 290-91 (Tenn.Ch.App.1896), aff'd. orally Oct. 28, 1986. The distinction between intrinsic and extrinsic fraud existed at common law, id., and is maintained today both under the rules of civil procedure and in case law. Tenn.R.Civ.P. 60.02 (Michie 1995); Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn.App.1990); Brown v. Raines, 611 S.W.2d 594, 597 (Tenn.App.1980).

Prior to the adoption of the Tennessee Rules of Civil Procedure, a party seeking to set aside a judgment on the basis of intrinsic fraud was required to prove the fraud either at trial, in a motion for a new trial, or on appeal. Noll, 38 S.W. at 290-91. Upon completion of the appellate process, a party could no longer seek to set aside a judgment on the basis of intrinsic fraud:

The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy.

Id. at 291. This rationale is consistent with fundamental principles of jurisprudence, which state: "Material facts or questions which were in issue in a former action and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and such facts or

ADDENDUM

questions become res judicata and may not again be litigated in a subsequent action brought between the same parties or *213. their privies." Medlock, 602 S.W.2d at 246.

Tigrett's allegations in this case are allegations of intrinsic fraud and cannot be the basis for a collateral attack of the chancery court's order.

Although not absolutely necessary to a decision in this case, some comment on Tigrett's statements in his brief might be enlightening. Tigrett apparently took the position in the trial court, and takes the position in this appeal, that the writer of this opinion, in considering Tigrett's application for extraordinary appeal and a stay of the chancery court's order, recognized that Tigrett could have an action for damages if the chancery court order was erroneously entered. Tigrett misconstrued what was said. It should be noted that at the time Tigrett, through his counsel, was attempting to obtain a stay of the trial court's order directing the sale of the stock, the position of Tigrett was that the stock should not be sold, and that there was no breach of the escrow agreement justifying the sale as called for by the city, the county, and PMA. Tigrett's counsel was quite adamant that the stock simply should not be sold. The court's comment was in that context and was to the effect that if the city and county improperly declared a default and Tigrett suffered damages by virtue thereof, the chancery court in that action could award damages for the improper "foreclosure." This is analogous to the erroneous granting of an injunction which occasions damages to the enjoined party. There was no indication at the time of the mentioned proceeding that Tigrett was complaining about the actions of Union Planters.

For the reasons stated, the order of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of appeal are assessed against appellant.

FARMER and LILLARD, JJ., concur.

FN1. The Share Certificates are in the name of Jovest Foundation and were duly assigned to Union Planters by instrument signed by
  an authorized signatory.

ADDENDUM