IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 3, 2025

**IN RE JACOB J.**

**Appeal from the Chancery Court for Sumner County**
**No. 2021-AD-18      Louis W. Oliver, Chancellor**

_____

**No. M2024-00184-COA-R3-PT**
_____

After this Court dismissed the appellant's first appeal as untimely, he filed a Tennessee Rule of Civil Procedure 60.02 motion for relief in the trial court. The trial court denied the motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Aleah Cagle, Gallatin, Tennessee, for the appellant, Martin G.

Wende Jane Rutherford, Nashville, Tennessee, for the appellees, Brian H. and April H.

Jonathan Skrmetti, Attorney General and Reporter, and Amber L. Barker, Senior Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**MEMORANDUM OPINION**[1]

**I.**

**A.**

Foster parents filed a petition to terminate parental rights and to adopt Jacob J. The Department of Children's Services ("DCS") joined the petition and moved to bifurcate the termination and adoption proceedings. The trial court granted DCS's request. After the

---

[1] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case." TENN. CT. APP. R. 10.

child's mother died, only the parental rights of the putative father, Martin G. ("Father") remained at issue.

When the termination petition was filed, Father was incarcerated in another state. At his request, the court appointed counsel to represent him. A month later, Father discharged his appointed counsel, and the court allowed counsel to withdraw. Electing to represent himself, Father asked for copies of court filings from the current case and the previous dependency and neglect proceedings. Citing his pro se status, he also requested additional time to prepare for trial. The court granted his requests. It ordered the clerk to provide Father with a copy of all court filings, and it ordered DCS to provide Father with "a copy of [the agency's] records and the records of the Juvenile Court proceedings." The court postponed the trial until September 21, 2022.

Shortly before trial, the court held a status conference. DCS reported that it had complied with the court's discovery order. Father had been in receipt of the requested documents since August 23, 2022. Arguing that he needed more time to prepare for trial, Father requested another continuance. Finding no reason for further delay, the court denied his request.

Father participated at trial by video. At the outset, counsel for DCS reported a recent development. In preparing for trial, counsel discovered that DCS had omitted approximately 50 pages from the records it provided to Father. To rectify its mistake, DCS sent the omitted pages to Father by email and overnight express mail. Father asserted that he had not yet seen the missing pages. Based on this discovery omission and his problems accessing the prison library, Father asked for another continuance.

After reviewing the omitted pages, the court denied Father's motion. In the court's view, the omitted materials were not relevant to the issues at hand. And Father's limited access to the prison library did not justify another continuance. The court noted that Father had chosen to represent himself, and the case had been pending for more than a year.

On September 28, 2022, the trial court entered a final order terminating Father's parental rights to the child. It found that the petitioners had established three grounds for termination of parental rights by clear and convincing evidence. It also determined that termination of Father's parental rights was in the child's best interest. The order specified that the termination decision was final and "immediately appealable as of right under Rule 3(a)."

Father filed a motion for a new trial thirty-seven days after entry of the final order. *See* TENN. R. CIV. P. 59.02 (requiring "[a] motion for new trial and all other motions permitted under this rule [to] be filed and served within 30 days after judgment has been entered"). He argued that the court erred in refusing his requests to postpone the trial. A

2

few months later, without addressing Father's untimely post-trial motion, the court entered a final decree of adoption.

## B.

On January 4, 2023, Father filed his first notice of appeal, seeking relief from the order terminating his parental rights. We dismissed his appeal as untimely. *In re Jacob J.*, No. M2023-00029-COA-R3-PT, 2023 WL 155076, at *2 (Tenn. Ct. App. Jan. 11, 2023) (memorandum opinion); *see* TENN. R. APP. P. 4(a) (requiring a notice of appeal to "be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from"). We explained that "the time limit for filing a notice of appeal is mandatory and jurisdictional." *In re Jacob J.*, 2023 WL 155076, at *2. We could "neither waive nor extend the thirty-day time period." *Id.* But Father could seek relief from his failure to file a timely notice of appeal in the trial court. *Id.*

On October 26, 2023, Father filed a Rule 60.02 motion for relief from the judgment terminating his parental rights. He filed an amended motion several months later. Father based his request on "intrinsic fraud, newly discovered evidence, mistake, inadvertence, surprise and excusable neglect." He complained that "his rights to a fair and just trial w[ere] severely prejudiced" because of his "lack of knowledge and understanding of legal procedure and rules of evidence." He claimed that DCS had "intentionally withheld documents" from him and "lied to the court" at the status conference. As a result, he was unprepared for trial. He also submitted new evidence he claimed to have discovered after the trial that, in his view, would have changed the outcome.

After a hearing, the court denied Father's motion. According to the court, Father did not present clear and convincing evidence that he was entitled to relief on any of the grounds listed in Rule 60.02. *See* TENN. R. CIV. P. 60.02. His primary concern appeared to be DCS's failure to take the necessary steps to place the child with the paternal grandparents during the dependency and neglect proceedings. Father also complained about the discovery omission and the sufficiency of the evidence at trial. Although those arguments "would have been a proper issue on appeal," Father "offered no evidence or explanation as to why he failed to timely file a Notice of Appeal."

## II.

## A.

Father chose to represent himself in the trial court. As a pro se litigant, he was "entitled to fair and equal treatment." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). But pro se parties cannot be allowed "to shift the burden of the litigation to the courts or to their adversaries." *Hessmer v. Miranda*, 138 S.W.3d 241, 245 (Tenn. Ct. App. 2003). They are not excused from complying with the same substantive

3

and procedural rules imposed on represented parties. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

Father appeals the trial court's denial of his Rule 60.02 motion. We review the trial court's ruling under an abuse of discretion standard. *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015). A trial court abuses its discretion "when it applies an incorrect legal standard, reaches an illogical result, commits clear error in its assessment of the evidence, or relies upon flawed reasoning that results in an injustice." *Hussey v. Woods*, 538 S.W.3d 476, 487 (Tenn. 2017) (quoting *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014)).

Relief under Rule 60.02 is "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). It acts as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). But this escape valve "should not be easily opened." *Hussey*, 538 S.W.3d at 483 (quoting *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 127 (Tenn. 2013)). Thus, the moving party must establish by clear and convincing evidence that he is entitled to relief. *Id.*

Rule 60.02 permits a trial court to relieve a party from a final judgment on five specified grounds. TENN. R. CIV. P. 60.02. Those grounds are

> (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

*Id.* Father contends he was entitled to relief on grounds (1), (2), or (5).[2]

---

[2] On appeal, DCS asserts that Father's motion was untimely. A Rule 60.02 motion arguing for relief based on reasons (1) or (2) must be filed within one year of entry of the order from which the litigant seeks relief. TENN. R. CIV. P. 60.02. Here, the court entered its final judgment on September 28, 2022. *See id.* 58 (providing that "entry of a judgment . . . is effective when [the] judgment . . . is marked on the face by the clerk as filed for entry . . . [and contains] . . . the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel"). Father's motion was marked filed on October 26, 2023, more than a year after entry of the judgment. *See id.* 5.06. As Father points out, someone also stamped "RECEIVED SEP 25, 2023" on the motion. As a pro se inmate, Father's motion would be considered timely "if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing." *Id.* But there is no explanation for the received stamp in this record. Father had the burden of proving compliance with the inmate provision of the filing rule. *Id.* Given the lack of proof, we must presume that the motion was filed

B.

We conclude that Father is not entitled to relief based on excusable neglect. *See* TENN. R. CIV. P. 60.02(1). Father argues that the trial court's "mistake, excusable neglect, and surprise" in failing to address his Rule 59 motion "negatively impacted" his ability to file a timely notice of appeal. So "he was not on notice that the termination order was final." But Father filed his motion more than thirty days after entry of the judgment. TENN. R. CIV. P. 59.02. An untimely post-trial motion does not extend the time for filing a notice of appeal. *See Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009). Perhaps more importantly, Father never made this argument in the trial court. "Issues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006); *Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 809 n.7 (Tenn. Ct. App. 2015).

Nor did he show that he is entitled to relief based on any fraud or misconduct of DCS. *See* TENN. R. CIV. P. 60.02(2). Father offered no evidence, much less clear and convincing evidence, to support his claims of misconduct. An inadvertent discovery omission that was swiftly brought to the court's attention does not warrant relief from a final judgment. *See Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (explaining that relief is not warranted unless the fraud or misconduct kept the movant and the court "in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights" (quoting *Leeson v. Chernau*, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987))).

Similarly, Father failed to show that he was entitled to relief based on "newly discovered evidence." Our courts have considered requests of this type within the parameters of Rule 60.02(5). *See, e.g.*, *Vaughan v. Hawkins Cnty.*, No. E2012-02160-COA-R3-CV, 2013 WL 3770852, at *2 (Tenn. Ct. App. July 16, 2013); *Vest v. Duncan-Williams, Inc.*, No. M2005-00466-COA-R3-CV, 2006 WL 2252750, at *4 (Tenn. Ct. App. Aug. 3, 2006). Despite its broad language, relief under the catchall provision is limited to the "most compelling, unique, exceptional, and extraordinary circumstances." *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 512 (Tenn. Ct. App. 2005).

A trial court may relieve a litigant from a final judgment and grant a new trial based on newly discovered evidence "only when it is evident that an injustice has been done and a new trial will change the result." *Vaughan*, 2013 WL 3770852 at *2. To justify relief, the moving party must show that the evidence was unknown before trial and "could not have been known through exercise of reasonable diligence." *Vest*, 2006 WL 2252750 at *4; *see also Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596-97 (Tenn. 1994) (agreeing

---

as indicated on October 26, 2023. Thus, Father's request for relief predicated on reasons (1) and (2) was untimely. And the trial court could have denied his request on this basis.

that a final judgment should not be set aside when the moving party could have discovered the new evidence through the exercise of reasonable diligence). And there must be proof that the evidence, if admitted, would have changed the outcome. *Vaughan*, 2013 WL 3770852, at *2.

Here, Father failed to meet the high burden for obtaining relief on this basis. His "newly discovered evidence" included text messages between a DCS employee and the child's paternal grandfather, emails from the child's paternal grandfather, a copy of the paternal grandparents' motion to intervene in the dependency and neglect proceedings, the order granting the motion, and a register of actions from the child support proceeding in another court. Father did not demonstrate that he was unable to obtain this evidence before trial through the exercise of reasonable diligence. *See Vest*, 2006 WL 2252750, at *4; *Seay v. City of Knoxville,* 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983). Nor has he shown that an injustice was done or that admission of this evidence would change the result of the case. *See Vaughan*, 2013 WL 3770852, at *2.

Father also argues that he was entitled to relief based on the court's refusal to postpone the trial. This would have been a proper issue to raise in a timely appeal. But it is not a reason to invoke the exceptional remedy of Rule 60.02. *See Lund v. Lund*, No. E2010-01727-COA-R3-CV, 2011 WL 5561627, at *6 (Tenn. Ct. App. Nov. 16, 2011) (rejecting similar attempt to avoid consequences of failure to file timely appeal); *St. Nagy v. Dubois*, No. E2008-01891-COA-R3-CV, 2009 WL 1819238, at *3 (Tenn. Ct. App. June 26, 2009) (same). Rule 60.02 is not "a mechanism for use by a party who is merely dissatisfied with the result of a particular case." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991).

## III.

The trial court did not abuse its discretion in denying Father's Rule 60.02 motion to set aside the order terminating his parental rights. Father did not show that he was entitled to relief on one of the specified grounds. So we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

6