# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 3, 2012 Session

## CHRISTOPHER FURLOUGH v. SPHERION ATLANTIC WORKFORCE, LLC

**Appeal by Permission from the Special Workers' Compensation Appeals Panel
Circuit Court for Davidson County
No. 08C1221     Joe P. Binkley, Jr., Judge**

---

### No. M2011-00187-SC-WCM-WC - Filed February 22, 2013

---

We accepted review of this appeal to determine whether, when a workers' compensation settlement involving an employee represented by counsel is approved by the Department of Labor and the SD-1 form is submitted contemporaneously with the settlement agreement, a court may set the settlement aside as non-final based on the court's determination that the SD-1 form was not "fully completed." We hold that when the Department of Labor approves a settlement, it implicitly approves the accompanying SD-1 form, and a court has no authority to set the settlement aside based on its independent finding that the SD-1 form was not "fully completed." We therefore reverse the judgments of the Panel and of the trial court and dismiss the employee's petition.

**Tenn. Code Ann. § 50-6-225(e)(6) (2008); Judgments of the Trial Court and the Special Workers' Compensation Appeals Panel Reversed; Petition Dismissed**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, and WILLIAM C. KOCH, JR., JJ., joined. SHARON G. LEE, J., not participating.

Todd I. Heird, Knoxville, Tennessee, for the appellant, Spherion Atlantic Workforce, LLC.

Michael Anthony Walker, Nashville, Tennessee, for the appellee, Christopher Furlough.

**OPINION**

**Factual and Procedural History**

Evidence Presented at Trial

In the fall of 2001, Christopher Furlough ("Employee") injured his back in the course and scope of his employment with Beard Property Maintenance, Inc. Dr. Thomas J. O'Brien, an orthopaedic surgeon, treated Employee and performed surgery in 2002 on his back. After Employee attained maximum medical improvement, Dr. O'Brien assessed a 10% permanent partial impairment rating to the body as a whole as a result of the injury.

Employee was struck in the back by a large recycling bin on December 4, 2005, while working for Spherion Atlantic Workforce, LLC ("Employer"). This injury occurred in the same location on his back as the prior injury. Employee promptly reported the injury, and Employer provided him with a list of medical care providers.

Employee initially selected a chiropractor from this list, who declined to treat him. Employee was then referred to Concentra Medical Center, where Dr. William Dutton recommended physical therapy and placed Employee on light duty.

At the time of the injury, Employee had been working on Fridays, Saturdays, and Sundays, while attending college courses on Tuesdays and Thursdays. On December 10, 2005, Employer offered Employee a light-duty job alphabetizing files at its recruiting center. Employee reported for work and attempted to perform this job for one day. However, Employee testified that the twisting this assignment required of him caused such pain in his back and leg that he could not continue. Over the ensuing three days, Employee called Employer and reported that he could not do the job. Employee believed that his calling in three times unable to work had resulted in the termination of his employment; therefore, Employee did not seek further work with Employer.[1] Employee continued attending college courses twice a week from 8:00 a.m. to 1:00 p.m.

On December 13, 2005, Employee consulted neurosurgeon Dr. Robert Weiss, who ordered imaging studies. Dr. Weiss noted that Employee complained primarily of pain on his right side, but the tests showed disc degeneration and protrusion only on the left side. For this reason, Dr. Weiss concluded that surgery would not benefit Employee. On December 21, 2005, Dr. Weiss opined that Employee had reached maximum medical

---

[1] According to Employer's employee management records, and consistent with Employee's statement, his termination date is recorded as December 13, 2005.

improvement and discharged Employee from his care, without assessing any permanent impairment rating, imposing any permanent physical restrictions, or referring Employee to another medical provider for evaluation.

Frustrated with the pain he still experienced and the lack of treatment he had received, Employee sought relief from Dr. O'Brien, the orthopaedic surgeon who treated Employee and performed surgery in 2002. Although Dr. O'Brien prescribed pain medication for several months, he declined to perform surgery on Employee for the 2005 injury, citing a conflict of interest.

As a result, Employee decided to consult with a lawyer and eventually contacted the Law Office of Donald D. Zuccarello. Mr. Zuccarello personally met with Employee at a McDonald's restaurant to discuss his case. After Employee signed a contract with Mr. Zuccarello, Employee was referred to Dr. Richard Fishbein, an orthopaedic surgeon, for an independent medical evaluation in April 2006. Dr. Fishbein opined that Employee had reached maximum medical improvement and assigned him a 13% permanent impairment rating to the body as a whole. However, Dr. Fishbein acknowledged that this figure included both of Employee's work injuries; that is, he did not "subtract out" the 10% permanent impairment rating assigned Employee as a result of his 2001 injury.

A benefit review conference was held on June 8, 2006, and was attended by Employee, attorneys for both parties, and Workers' Compensation Specialist Michelle L. Thomas. Delain Deatheridge, an attorney and associate of Mr. Zuccarello's firm, represented Employee at the conference. The parties agreed upon a settlement that provided for a lump sum payment of $11,500 (minus $2300 in attorney's fees), corresponding to a 12.4% permanent partial disability to the body as a whole, and future medical benefits. The parties negotiated a few changes to the agreement, as reflected in their correspondence. The final settlement was approved by Workers' Compensation Specialist Jim McGrath[2] of the Department of Labor and Workforce Development ("Department") at a second hearing on June 21, 2006, pursuant to Tennessee Code Annotated section 50-6-206(c)(1) (2008 & Supp. 2012). The settlement did not require court approval pursuant to section 50-6-206(a)(1). The settlement and SD-1 form were signed by Employee, both parties' attorneys, including Ms. Deatheridge, and Specialist McGrath. Employee, Ms. Deatheridge, and Specialist McGrath also signed a checklist setting out Employee's rights under the law.

After executing the settlement, Employee consulted with Dr. Stanley Hopp, an orthopaedic surgeon. Dr. Hopp eventually performed three surgeries on Employee's back,

---

[2] This surname is also spelled "McGraft" and "McGraff" at various places in the record. We will use "McGrath" throughout this opinion, consistent with the parties' briefs.

the first in November 2006. Shortly thereafter, Employee retained new counsel, Michael Walker. On April 18, 2008, almost two years after the settlement, Mr. Walker filed in the Circuit Court for Davidson County a petition to set aside the settlement. A hearing was held on the petition on December 1, 2010. Central to Employee's argument that the settlement should be set aside was his assertion that paragraph 2.3 of the agreement was inaccurate:

> Employee returned to the pre-injury employment at a wage equal to or greater than the wage Employee was receiving at the time of injury. However, Employee has since been terminated; therefore, the maximum permanent partial disability that Employee may receive is one and one-half (1½) times the medical impairment rating under Tenn. Code Ann. § 50-6-241 (2004).

Employer proffered the affidavit of Vanessa Nunez, custodian of Employer's business records, who stated that Employee had been terminated on December 13, 2005—the same day Dr. Weiss examined Employee. On the other hand, Employee introduced a letter, on Employer's letterhead and dated December 14, 2006, offering Employee "an appropriate temporary modified duty work assignment" at Goodwill Industries. Documents introduced into evidence indicate this letter was mistakenly sent by personnel of Employer unaware a settlement had been reached. Nonetheless, Employee testified that he never received notice that he had been terminated and had done nothing wrong. In short, the parties disputed whether Employee had been terminated at all, and, if so, whether it had been for cause.

Employee admitted reading paragraph 2.3 of the settlement agreement, but he denied comprehending it, and he testified that neither Ms. Deatheridge nor Specialist McGrath explained to him what the various provisions meant. Employee did not remember Specialist McGrath specifically, although he did recall meeting with a "gentleman"—without his attorney present and for no more than two minutes—who told him, "put your initials here, here, here and there" but did not explain anything to him. Employee testified that he signed and initialed whatever was placed in front of him because he was still in pain, had not received adequate treatment, and believed that he could obtain prompt treatment only if he settled his case.

Neither Employee, who testified in person, nor Ms. Deatheridge, who testified by deposition, could clearly recall the benefit review conference. Ms. Deatheridge testified that she worked at Mr. Zuccarello's firm for about three years and handled approximately three hundred workers' compensation cases. Although she could not recall specific details of Employee's case, Ms. Deatheridge testified that the one and one-half times cap would only apply to a terminated employee who had been terminated for cause. She testified that the applicability of this cap was critically important for negotiating a favorable settlement but that she would have accepted Employee's understanding of his employment status at face

-4-

value. Ms. Deatheridge stated that she would not advise an employee to settle a claim merely to obtain prompt medical treatment, nor would she recommend that a client sign an unfavorable settlement. She testified that her practice was to explain the options to her clients, answer their questions, and be present when they initialed the checklist enumerating their rights under the law. It was also her practice to sign the settlement documents only after her clients had done so. As to the merits of Employee's settlement, Ms. Deatheridge testified that because Dr. Weiss released Employee without assigning him an impairment rating, "there is always a chance if he goes to court that he could receive the zero percent."

## Ruling of Trial Court

The trial court noted that Employee's injury occurred on December 4, 2005, and that Dr. Weiss opined that Employee reached maximum medical improvement on December 21, 2005, a conclusion the trial court found implausible: "I don't see how a man with that kind of injury that he had, having had a previous back injury and back surgery and the injury that he described, how he could have reached maximum medical improvement in 17 days." Although the trial court recognized that Employer offered Employee light-duty work, it credited Employee's testimony that he was physically unable to do the job. The trial court also credited Employee's testimony that he received no notice of termination from Employer. The trial court declined to decide whether Employee had been terminated, but found that even if Employee had been terminated, there was "certainly no proof" that he had been terminated for cause.

The trial court further found that Employee had been unaware of available benefits under the workers' compensation law and that no one informed him as to the benefits he could receive. The trial court also found that Employee was "not represented" at the benefit review conference, stating:

> I think Ms. Deatheridge is a fine person. Mr. Zuccarello is a fine person. They're both fine lawyers. But Mr. Furlough was simply not represented at this proceeding. An attorney was present, but he was not represented. He did not understand and he did not comprehend what was happening at the benefit review conference, and he couldn't be expected to based on the short period of time that he spent with both Attorney Don Zuccarello at McDonald's and the short period of time and little discussion he had with Ms. Deatheridge at the Tennessee Department of Labor.

Despite this finding, the trial court acknowledged that substantial preparation had occurred before the benefit review conference: "Now, I agree that Mr. Zuccarello and Ms. Deatheridge and whomever at the law office gathered medical information, requested [an]

independent medical evaluation and did those things, all the things that you might should [sic] do to protect your client.  But Mr. Furlough was not explained what was being done, why it was being done, and what his options were."

The trial court granted Employee's petition to set aside the settlement, citing two distinct rationales.  First, the trial court premised relief on its holding that "Mr. Furlough did not receive substantial benefits provided by the workers' compensation laws."  See Tenn. Code Ann. § 50-6-206(c)(1)(B) (2008 & Supp. 2012).  Second, the trial court held that because Employee was "not represented" by counsel, the settlement should have been court approved, see Tenn. Code Ann. § 50-6-206(c)(3)(B), and Employee thoroughly informed as to the benefits available under the workers' compensation law, see Tenn. Code Ann. § 50-6-206(c)(1)(B).  The trial court determined that "Approving Specialist Jim McGraft [sic] did not go over with Mr. Furlough any information in the settlement statement itself."

Although the trial court found that "the settlement is not effective and is not entitled to the same standing as a judgment," the trial court nevertheless relied upon Tennessee Rule of Civil Procedure 60.02(5), as well as its inherent authority, to grant Employee's petition to set aside the settlement:

> And I rely upon the Court's inherent authority to set aside the settlement when it does not comply with the applicable law.  And I also find that based on clear and convincing evidence, there's two bases for setting aside; first of all, the Court's inherent authority to do so; and then secondly, based upon Rule 60.02(5), and I realize it was not pled, I'm allowing the petition to be amended to conform to the proof, and Rule 60.02(5) does apply in this case.  And it's been established, in my view, by clear and convincing evidence.

As a procedural matter, the trial court indicated that Employee could properly file a claim for workers' compensation benefits or request another benefit review conference:

> I think the benefit review conference procedure has been exhausted.  And I think [Employee is] ready to file something in court.  That's my feeling now.  If Mr. Walker feels like out of an abundance of caution to make another request for a benefit review conference, then that's fine.  I mean, what I found is Mr. Furlough was present at the benefit review conference.  Even though [Ms. Deatheridge] was present, he was not represented by counsel.  And he was not afforded the benefits under the workers' compensation law for that approval.  So the approval is set aside.  Now, I think they went through the process required in filing a lawsuit.  That's my feeling.

Employer timely filed an appeal, see Tenn. Code Ann. § 50-6-225(e) (2008 & Supp. 2012), which was referred to a Special Workers' Compensation Appeals Panel, see Tenn. Sup. Ct. R. 51.

Ruling of Appeals Panel

The Special Workers' Compensation Appeals Panel did not reach the merits of this dispute; instead, the Panel dismissed the appeal and vacated the trial court's judgment on a procedural issue not raised by the parties: "A settlement approved by the department shall not become final until the statistical data form required by this section is fully completed and received by the department."  Tenn. Code Ann. § 50-6-244(d) (2008 & Supp. 2012).  The "statistical data form required by this section" is known as the "Form SD-1" or "SD-1 form." Corum v. Holston Health & Rehab. Ctr., 104 S.W.3d 451, 452 (Tenn. 2003).  The Panel found that "many parts of the form were left blank" and held that "the proposed settlement did not become final" due to the "clear and unambiguous" language of section 50-6-244(d). While recognizing that the benefit review conference process is exhausted upon the "[r]eaching of a mediated settlement, as evidenced by a signed document executed by the proper parties," Tenn. Comp. R. & Reg. 0800-2-5-.09(1)(b) (2008), the Panel nonetheless held that the parties had failed to exhaust the benefit review conference process:

> It was the apparent intention of the parties to exhaust the BRC process by reaching a mediated settlement under subsection (b) of this rule.  As a result of procedural error, however, they failed to do so.  We do not find any evidence that they exhausted the BRC process by any of the other means delineated in the rule.  In view of the parties' failure to exhaust statutorily available administrative remedies, we conclude that Employee's suit to set aside the settlement agreement was filed prematurely.  Accordingly, this appeal is dismissed, the judgment of the trial court is vacated, and the case is remanded to the Department of Labor for further proceedings.  We make no determination regarding the merits of the parties' arguments as to whether the settlement agreement, had it become final, should have been set aside.

We granted Employer's motion seeking full Court review of the Panel's decision.

**Standard of Review**

Whether a trial court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness. Word v. Metro Air Servs., Inc., 377 S.W.3d 671, 674 (Tenn. 2012).  This appeal also involves an issue of statutory construction, which we review de novo with no presumption of correctness. Mills v.

-7-

Fulmarque, Inc., 360 S.W.3d 362, 366 (Tenn. 2012). On the other hand, we review the trial court's factual findings "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding[s], unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2).

**Analysis**

Procedures for Approving Settlements

The Workers' Compensation Law provides that "interested parties shall have the right to settle all matters of compensation between themselves," Tenn. Code Ann. § 50-6-206(a)(1), but settlements must comport with the procedural and substantive safeguards prescribed by the Legislature. Tenn. Code Ann. § 50-6-206(a)-(c).

If parties seek to have their settlement "approved by the judge of the circuit court or chancery court of the county where the claim for compensation is entitled to be made," the judge must "examine the proposed settlement to determine whether the employee is receiving, substantially, the benefits provided by this chapter." Tenn. Code Ann. § 50-6-206(a)(1).

If, however, the parties dispute whether a claim is compensable, or the amount of compensation, "the parties may settle the matter without regard to whether the employee is receiving, substantially, the benefits provided by this chapter; provided, that the settlement is determined . . . to be in the best interest of the employee." Tenn. Code Ann. § 50-6-206(b) (Supp. 2012).

In this case, the parties did not seek court approval under subsection (a) and could not have proceeded under subsection (b) because, at all times relevant to this appeal, subsection (b) applied only to settlements *not* providing for future medical benefits, among other restrictions. See Tenn. Code Ann. § 50-6-206(b) (2008).[3]

The parties here sought Department approval pursuant to Tennessee Code Annotated section 50-6-206(c):

(1) The commissioner or the commissioner's designee may approve a proposed settlement among the parties if:
(A) The settlement agreement has been signed by the parties;

---

[3] The limitations on compromising and settling future medical benefits are now addressed in Tennessee Code Annotated section 50-6-206(a)(2) (Supp. 2012), which is not implicated in this appeal.

(B) The commissioner or the commissioner's designee has determined that the employee is receiving, substantially, the benefits provided by this chapter, . . . and

(C) If the employee was not represented by counsel at a benefit review conference, the settlement agreement shall be reviewed by a specialist within the department who was not associated with the employee's case.

(2) Among the parties, a settlement approved by the commissioner pursuant to this subsection (c) shall be entitled to the same standing as a judgment of a court of record for purposes of § 50-6-230 and all other purposes. A settlement approved by the commissioner may be appealed as a final order pursuant to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

(3)(A) For settlements in which the employee is represented by counsel, the parties shall seek the approval of the department as provided in this subsection (c), unless the parties agree to seek the approval of a court pursuant to subsection (a).

(B) For settlements in which the employee is not represented by counsel, the parties shall seek the approval of a court pursuant to subsection (a), unless the parties agree to seek approval from the department pursuant to subsection (c).
. . . .

(5) In approving settlements pursuant to this subsection (c), . . . [i]f the injured employee is not represented by counsel, then the commissioner or the commissioner's designee shall thoroughly inform the employee of the scope of benefits available under this chapter, the employee's rights and the procedures necessary to protect those rights.

Tenn. Code Ann. § 50-6-206(c). With this statute in mind, we address the Panel's holding that "Employee's lawsuit to set aside the settlement agreement was filed prematurely," either because "the proposed settlement did not become final" or due to "the parties' failure to exhaust statutorily available administrative remedies."

Finality of Settlements

Although not raised by the parties, the Panel examined the SD-1 form, found that "many parts of the form were left blank," and held that "the proposed settlement did not become final" due to the "clear and unambiguous" language of section 50-6-244(d), which states:

In cases involving a workers' compensation settlement that is submitted to the department for approval, the statistical data form required by this section *shall*

*also be completed and submitted to the department at the time of the submission of the settlement for approval.* A settlement approved by the department *shall not become final* until the statistical data form required by this section *is fully completed and received by the department.*

Tenn. Code Ann. § 50-6-244(d) (emphasis added). We agree with the Panel that the plain language of this statute requires the submission of a "fully completed" SD-1 form to the Department along with the settlement. However, we disagree with the Panel's implicit conclusion that a *court* may, after the Department has approved a settlement and an accompanying SD-1 form, set aside a settlement based on the court's determination that the SD-1 form was not "fully completed."

The Legislature has tasked *the Department* with promulgating the SD-1 form for the purpose of aiding *the Department* in administering the workers' compensation system. Tenn. Code Ann. § 50-6-244(a). Pursuant to section 50-6-244(d), "fully completed" SD-1 forms are not merely "received" by the Department; they are submitted to the Department "for approval." Tenn. Code Ann. § 50-6-244(d); <u>see also</u> Tenn. Comp. R. & Reg. 0800-2-1-.24(1)(b) (2008) ("In cases involving a workers' compensation settlement which is submitted to the [Department] for approval, a copy of Form SD-1 shall also be completed and submitted to the [Department] *for approval*, at the time of the submission of the settlement for approval." (emphasis added)).

In addition, the General Assembly has cast the Department, not the courts, in the role of policing the completeness of SD-1 forms by vesting the Department with the power to penalize employers who neglect their duty to "complete substantially and file the statistical data form with such frequency as to indicate a general business practice." Tenn. Code Ann. § 50-6-244(f); <u>see also</u> Tenn. Code Ann. § 50-6-244(e) ("It is the responsibility of the . . . employer's agent to complete and file the form required by this section . . . ."). In light of this clear statutory language, and as a matter of institutional competency, we defer to the Department the question whether the SD-1 form is "fully completed" for purposes of section 50-6-244(d).[4] Where, as here, the Department approves of the settlement and the accompanying SD-1 form, courts may not second-guess the Department's determination that the form was "fully completed."

---

[4] For court-approved workers' compensation settlements and workers' compensation claims resolved by trial, Tennessee Code Annotated section 50-6-244(b)(2)-(3) requires filing of the "fully completed" SD-1 form with the clerk of the court. These statutes are not implicated in this appeal.

Our conclusion that courts have no authority to second-guess the Department's approval of the SD-1 form is buttressed by Tennessee Code Annotated section 50-6-244(b), which provides:

> In the event of an appeal of a workers' compensation trial verdict to the supreme court of Tennessee, this section shall neither abrogate nor supercede the Rules of Appellate Procedure regarding the computation of the time for the proper filing of a notice of appeal. *The information submitted in the statistical data form shall not be admissible on appeal for any purpose.*

Tenn. Code Ann. § 50-6-244(b)(6) (emphasis added). Although section 50-6-244(b) is not directly on point because it applies to an "appeal" of a "trial verdict," by this emphatic and definitive statutory language, the Legislature has clearly indicated that the content of the SD-1 form should not be considered by appellate courts for any purpose.

In summary, although the Workers' Compensation Law requires the submission of "fully completed" SD-1 forms along with proposed settlements submitted to the Department for approval, the Legislature has explicitly tasked the Department, not courts, with scrutinizing the content of those forms. Where, as here, the Department approves the proposed settlement, the Department shall be deemed to have approved the accompanying SD-1 form as "fully completed." Therefore, the Panel erred by finding that the settlement was not "final" for purposes of section 50-6-244(d) because the SD-1 form was not "fully completed."

## Exhaustion of Administrative Remedies

The Panel also determined that the parties failed to exhaust the administrative remedies available, despite their intention to reach a mediated settlement; therefore, the Panel concluded that Employee's petition to set aside the settlement agreement was not properly before the circuit court: "In view of the parties' failure to exhaust statutorily available administrative remedies, we conclude that Employee's lawsuit to set aside the settlement agreement was filed prematurely." Because we disagree with the Panel's finding that the parties did not exhaust the benefit review conference process, we hold that the trial court did not lack subject matter jurisdiction on this ground.

We have long recognized the general rule that when an administrative remedy is provided by statute, that remedy must be exhausted before relief may be sought in court. Bracey v. Woods, 571 S.W.2d 828, 829 (Tenn. 1978) (quoting Tenn. Enamel Mfg. Co. v. Hake, 194 S.W.2d 468, 470 (Tenn. 1946)). "The exhaustion doctrine serves to prevent

-11-

'premature interference with agency processes.'" Thomas v. State Bd. of Equalization, 940 S.W.2d 563, 566 (Tenn. 1997) (quoting 2 Am. Jur. 2d Administrative Law § 505 (1994)).

The plain words of the Workers' Compensation Law expressly require exhaustion: "No claim for compensation under this chapter shall be filed with a court having jurisdiction to hear workers' compensation matters, as provided in § 50-6-225, until the parties have exhausted the benefit review conference process provided by the [Department]." Tenn. Code Ann. § 50-6-203(a)(1) (2008); see also Word, 377 S.W.3d at 675. As authorized by the Legislature, the Department has adopted regulations creating the benefit review conference process, Tenn. Code Ann. § 50-6-233(a)(3), (c)(2) (2008), and these regulations have the force and effect of law. Word, 377 S.W.3d at 676 (citing Swift v. Campbell, 159 S.W.3d 565, 571-72 (Tenn. Ct. App. 2004)). Pursuant to these regulations, one means of exhausting the benefit review conference process is a mediated settlement:

> (1) The Benefit Review Conference Process shall be deemed exhausted only upon occurrence of any of the following:
>
> . . .
>
> > (b) Reaching of a mediated settlement, as evidenced by a signed document executed by the proper parties, including the Workers' Compensation Specialist;
>
> . . . .

Tenn. Comp. R. & Reg. 0800-2-5-.09(1)(b). Because it is undisputed that the parties in this case succeeded in "[r]eaching a mediated settlement, as evidence[d] by a signed document executed by the proper parties," Tenn. Comp. R. & Reg. 0800-2-5-.09(1)(b), the benefit review conference process was plainly exhausted.

The Panel's opinion implies that Employee was required to again exhaust administrative remedies before petitioning the trial court to set aside the Department-approved settlement. We disagree. Although we agree that Employee must exhaust the benefit review conference process to file "a claim for compensation" under the Workers' Compensation Law, Tenn. Code Ann. § 50-6-225 (2008 & Supp. 2012), Employee has not filed a "claim for compensation" in this dispute. Rather, Employee petitioned the trial court to set aside a Department-approved settlement. Having determined that Employee satisfied the exhaustion requirement, we hold that the trial court did not lack subject matter jurisdiction on this ground.

Finally, we address Employer's assertion that the trial court lacked subject matter jurisdiction to set aside the settlement because the only means of judicial review of a Department-approved settlement is an appeal under the Uniform Administrative Procedures Act ("UAPA"). As support for this assertion, Employer relies on Tennessee Code Annotated section 50-6-206(c)(2), which provides: "A settlement approved by the commissioner may be appealed as a final order pursuant to the Uniform Administrative Procedures Act . . . ." Tenn. Code Ann. § 50-6-206(c)(2).

Employer is correct that an *appeal* of a Department-approved settlement is governed by the UAPA. Employee is now foreclosed from appealing the settlement because he failed to file a petition for review in the appropriate court within sixty days of the final administrative order approving the settlement. See Tenn. Code Ann. § 4-5-322(b)(1)(A). Employee is not here seeking to appeal the settlement; rather, he is seeking to set aside the settlement. The trial court granted Employee's petition based on its inherent authority and Tennessee Rule of Civil Procedure 60.02(5).[5] The question we must next decide is whether either ground provided a proper basis for the exercise of the trial court's jurisdiction.

### Tennessee Rule of Civil Procedure 60.02

Tennessee Rule of Civil Procedure 60.02 provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud . . . , misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, . . . ; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court.

---

[5] The trial court explained its reliance on Rule 60.02(5) as follows: "[B]ased upon 60.02(5), and I realize it was not pled, I'm allowing the petition to be amended to conform to the proof, and 60.02(5) does apply in this case. And it's been established, in my view, by clear and convincing evidence."

Tenn. R. Civ. P. 60.02. We have recently emphasized that Rule 60.02 only applies to final judgments. Discover Bank v. Morgan, 363 S.W.3d 479, 489 (Tenn. 2012).

We have recognized the propriety of seeking relief under this rule from *court*-approved settlements of workers' compensation claims, although such relief is rare and "disfavored." Henderson v. SAIA, Inc., 318 S.W.3d 328, 338 (Tenn. 2010) (affirming denial of motion to set aside on Rule 60.02(5) grounds); Federated Ins. Co. v. Lethcoe, 18 S.W.3d 621, 625 (Tenn. 2000) (reversing grant of motion to set aside on Rule 60.02(5) grounds). But see Kirk v. St. Michael Motor Express, Inc., No. M2007-01058-WC-R3-WC, 2008 WL 4072053, at *4 (Tenn. Workers' Comp. Panel Sept. 2, 2008) (reversing denial of motion to set aside on Rule 60.02(5) grounds). As for Department-approved settlements, we declined to address the issue in the only case to have come before us in a similar posture. Dennis v. Erin Truckways, Ltd., 188 S.W.3d 578, 589 (Tenn. 2006).

In the case of a Department-approved settlement, there is no court order, only a final administrative order. Nonetheless, the Legislature has declared that a settlement approved by the Department pursuant to Tennessee Code Annotated section 50-6-206(c) "shall be entitled to the same standing as a judgment of a court of record for purposes of § 50-6-230 *and all other purposes.*"[6] Tenn. Code Ann. § 50-6-206(c)(2) (emphasis added). A Department-approved settlement, therefore, may be treated as a final judgment for purposes of Rule 60.02, and a trial court may set aside a Department-approved settlement if one or more of the enumerated grounds for relief under Rule 60.02 have been met.

However, we have characterized relief under Rule 60.02 as an "exceptional remedy," Nails v. Aetna Ins. Co., 834 S.W.2d 289, 294 (Tenn. 1992), "designed to strike a proper balance between the competing principles of finality and justice," Jerkins v. McKinney, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," Thompson v. Firemen's Fund Ins. Co., 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." Toney v. Mueller Co., 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." Killion v. Tenn. Dep't of Human Servs., 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." Henderson, 318 S.W.3d at 336.

---

[6] Tenn. Code Ann. § 50-6-230 (2008) ("All settlements of compensation by agreement of the parties and all awards of compensation made by the court, where the amount paid or to be paid in settlement or by award does not exceed the compensation for six (6) months' disability, shall be final and not subject to readjustment.").

A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence. McCracken v. Brentwood United Methodist Church, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" Goff v. Elmo Greer & Sons Constr. Co., 297 S.W.3d 175, 187 (Tenn. 2009) (quoting Teter v. Republic Parking Sys., Inc., 181 S.W.3d 330, 341 (Tenn. 2005)). In general, "the bar for attaining relief is set very high and the burden borne by the movant is heavy." Johnson v. Johnson, 37 S.W.3d 892, 895 n.2 (Tenn. 2001).

All motions for relief based on Rule 60.02 "shall be made within a reasonable time." Tenn. R. Civ. P. 60.02. Motions based on Rule 60.02(1) or (2) shall be made "not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02. In other words, "[o]ne year is the 'outer limit on the time allowed for filing the motion' under 60.02(1) or 60.02(2)." Rogers v. Estate of Russell, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001) (quoting Ellison v. Alley, 902 S.W.2d 415, 417 (Tenn. Ct. App. 1995)). Rule 60.02 does not "permit a litigant to slumber on her claims and then belatedly attempt to relitigate issues long since laid to rest." Thompson, 798 S.W.2d at 238.

Although motions based on Rule 60.02(5) are subject only to the "reasonable time" limitation, Tenn. R. Civ. P. 60.02; see also Rogers, 50 S.W.3d at 446, Rule 60.02(5) has been construed narrowly by Tennessee's courts. See Holiday v. Shoney's South, Inc., 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000) (citing Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn. 1993)). Rule 60.02(5) does not "relieve a party from his or her free, calculated, and deliberate choices." Id. Instead, the rule "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." Holiday, 42 S.W.3d at 94. An untimely request under Rule 60.02(1) or (2) may not be asserted under Rule 60.02(5). Wallace v. Aetna Life & Cas. Co., 666 S.W.2d 66, 67 (Tenn. 1984); Holiday, 42 S.W.3d at 94; Henderson v. Kirby, 944 S.W.2d 602, 605 (Tenn. Ct. App. 1996). Relief under Rule 60.02(5) is not proper "simply because relief under other provisions is time barred." Wallace, 666 S.W.2d at 67.

With these principles in mind, we consider the merits of Employee's petition to set aside the parties' settlement agreement.

## Merits of Employee's Petition

As we have noted, parties are generally free to settle workers' compensation claims. See Tenn. Code Ann. § 50-6-206(a)(1). However, approval of agreements is mandated by statute. See Tenn. Code Ann. § 50-6-206(a), (b), (c). The General Assembly has provided procedural and substantive safeguards that vary depending on the manner of approval sought. In this case, the parties submitted their proposed settlement for Department approval pursuant to section 50-6-206(c):

> (c)(1) The commissioner or the commissioner's designee may approve a proposed settlement among the parties if:
> (A) The settlement agreement has been signed by the parties;
> (B) The commissioner or the commissioner's designee has determined that the employee is receiving, substantially, the benefits provided by this chapter, . . . and
> (C) If the employee was not represented by counsel at a benefit review conference, the settlement agreement shall be reviewed by a specialist within the department who was not associated with the employee's case.
> . . . .
> (3)(A) For settlements in which the employee is represented by counsel, the parties shall seek the approval of the department as provided in this subsection (c), unless the parties agree to seek the approval of a court pursuant to subsection (a).
> (B) For settlements in which the employee is not represented by counsel, the parties shall seek the approval of a court pursuant to subsection (a), unless the parties agree to seek approval from the department pursuant to subsection (c).
> . . . .
> (5) In approving settlements pursuant to this subsection (c), . . . [i]f the injured employee is not represented by counsel, then the commissioner or the commissioner's designee shall thoroughly inform the employee of the scope of benefits available under this chapter, the employee's rights and the procedures necessary to protect those rights.

Tenn. Code Ann. § 50-6-206. Certain of these requirements are not in dispute; the parties do not dispute, for example, that the settlement agreement was signed by the parties, Tenn. Code Ann. § 50-6-206(c)(1)(A), or that the settlement agreement was reviewed by a workers' compensation specialist not associated with the case, Tenn. Code Ann. § 50-6-206(c)(1)(C).

Here, the trial court granted relief under Rule 60.02(5) based on its finding that, although retained counsel attended the benefit review conference, Employee was "not

represented" for purposes of the Workers' Compensation Law. The trial court held, therefore, that the settlement should have been court approved, see Tenn. Code Ann. § 50-6-206(c)(3), and that Employee was entitled to be "thoroughly" informed as to the scope of benefits available under the Workers' Compensation Law, see Tenn. Code Ann. § 50-6-206(c)(5). The trial court concluded both that Employee was not thoroughly informed and that under the settlement Employee was not "receiving, substantially, the benefits provided" by the Workers' Compensation Law, see Tenn. Code Ann. § 50-6-206(c)(1)(B)—a substantive safeguard that applies even to employees represented by counsel.

The evidence preponderates against the trial court's finding that Employee was "not represented" by counsel. In fact, it is beyond dispute that Employee *was* represented by counsel in this matter. Employee met with Donald D. Zuccarello to discuss his potential claim; Employee signed an "Employment Contract" with the Law Office of Donald D. Zuccarello; Mr. Zuccarello's firm arranged for Dr. Fishbein to provide an independent medical examination of Employee; an associate of Mr. Zuccarello's firm, Delain Deatheridge, attended the benefit review conference with Employee; Employee paid $2300 in attorney's fees out of his $11,500 lump sum settlement; and Employee signed a "Client Statement of Understanding" and initialed this statement: "I HAVE REVIEWED AND DISCUSSED WITH MY ATTORNEY FROM THE LAW OFFICE OF DONALD D. ZUCCARELLO ANY AND ALL FINAL ORDERS, JUDGMENT ORDERS, SETTLEMENT AGREEMENTS, AND RELEASES AND SETTLEMENT SHEETS REGARDING THE SETTLEMENT OF MY CASE(S)."

The trial court acknowledged that Employee retained Mr. Zuccarello's firm to represent him. However, the trial court appears to have interpreted "not represented by counsel" in Tennessee Code Annotated section 50-6-206(c)(3)(B) so broadly as to apply to employees who have retained attorneys but later become dissatisfied with the legal representation they received at settlement conferences. This interpretation is contrary to the statutory language. The statute provides that an employee who is unrepresented at the time a settlement is submitted for approval has the right to be thoroughly informed of the benefits to which the employee is entitled *before* the Department approves the settlement. Under the statute, the determination of an employee's legal representation, or lack thereof, must occur at the time a settlement is submitted for approval, not many years later when a petition is filed to set aside the settlement.[7] Because Employee *was* represented by counsel during the settlement negotiations and at the time the settlement was submitted to the Department for approval, the trial court clearly erred by premising its ruling, in part, on the absence of

_____

[7] Of course, an employee who suffers damages due to his attorney's neglect may pursue a malpractice action. Jamison v. Norman, 771 S.W.2d 408, 409 (Tenn. 1989).

procedural safeguards afforded only to employees "not represented by counsel." See Tenn. Code Ann. § 50-6-206(c)(3), (c)(5).

The trial court also granted relief based on its finding that under the settlement agreement Employee was not receiving, substantially, the benefits provided by the Workers' Compensation Law. See Tenn. Code Ann. § 50-6-206(c)(1)(B). This substantive safeguard applies to settlements approved by the Department, id., as well as courts, regardless of whether an employee is represented by counsel. See Tenn. Code Ann. § 50-6-206(a)(1) ("It shall be the duty of the judge . . . to determine whether the employee is receiving, substantially, the benefits provided by this chapter."); Kirk, 2008 WL 4072053, at *4 (reversing trial court's denial of motion to set aside court-approved settlement on Tenn. Code Ann. § 50-6-206(a)(1) grounds). We have construed "receiving, substantially, the benefits provided by this chapter" to mean "the employee is being paid approximately what the worker's compensation statutes provide for." Henderson, 318 S.W.3d at 340 & n.8 (interpreting Tenn. Code Ann. § 50-6-206(a)(1)).

What the workers' compensation statutes provide for depends, of course, on the facts of each case. One of the most important facts in determining potential workers' compensation benefits is whether the employee returned to work for the pre-injury employer at a wage no less than that earned by the employee at the time of the injury. If so, the maximum permanent partial disability benefits that the employee may receive is one and one-half times the medical impairment rating; if not, the employee may receive up to six times the medical impairment rating. Compare Tenn. Code Ann. § 50-6-241(d)(1)(A) (2008 & Supp. 2012), with Tenn. Code Ann. § 50-6-241(d)(2)(A). In a case of permanent partial disability, therefore, whether the employee is "receiving, substantially, the benefits provided by" the Workers' Compensation Law, Tenn. Code Ann. § 50-6-206(c)(1)(B), will depend on whether the employee returned to work at the pre-injury employer without loss of wage.

We have recognized that, if applied woodenly, the bright-line test of section 50-6-241(d)(1)(A)—"the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury"—would frustrate the purpose of the statute in "the common circumstance in which an employee who becomes permanently, partially disabled as the result of a workplace injury returns to work for the pre-injury employer but does not remain employed." Tryon v. Saturn Corp., 254 S.W.3d 321, 328 (Tenn. 2008). To remedy this problem, Tennessee courts developed the "meaningful return to work" concept. Id. at 328-30 (discussing the history of the concept); see also Bailey v. Krueger Ringier, Inc., No. 02S01-9409-CH-00061, 1995 WL 572056, at *4 (Tenn. Workers' Comp. Panel May 17, 1995) (first adopting the doctrine).

We have recognized that the circumstances to which this concept must be applied "are remarkably varied and complex," Tryon, 254 S.W.3d at 328, but "[t]hree factors guide the analysis: (1) whether the injury rendered the employee unable to perform the job; (2) whether the employer refused to accommodate work restrictions 'arising from' the injury; and (3) whether the injury caused too much pain to permit the continuation of the work." Williamson v. Baptist Hosp. of Cocke Cnty., Inc., 361 S.W.3d 483, 488 (Tenn. 2012).

The parties vigorously dispute whether the higher cap should have applied in this case. Employer contends that it did return Employee to work but that Employee simply walked off the job. Employer alternately contends that it fired Employee for cause, and that employees fired for cause are not entitled to the higher cap. See Carter v. First Source Furniture Grp., 92 S.W.3d 367, 371-72 (Tenn. 2002). Employee contends that although he attempted to return to work, he simply could not perform the work required due to his injury. Employee further contends that he was terminated, if at all, because of his injury and that the higher cap should have applied.

We need not resolve this dispute, however, for although Employee's petition does not reference Rule 60.02, Employee clearly seeks relief from a "mistake," see Tenn. R. Civ. P. 60.02(1). Employee's claim for relief rests upon his disputed employment status and the resulting cap, as plainly stated in Employee's petition:

> The [Department's] Approval [of the settlement] incorrectly stated that Petitioner (employee) had been terminated and that because of said termination the maximum permanent partial disability award that the employee could receive was 1.5 times the medical impairment rating under Tenn. Code Ann. § 50-6-241.

As already explained, motions seeking relief pursuant to Rule 60.02(1) or (2) must be filed "not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02. Because Employee's April 18, 2008 petition was filed more than one year after the June 21, 2006 settlement, the petition was not timely filed, and relief is not available under Rule 60.02(1).[8]

Moreover, the trial court erred in granting relief based on Rule 60.02(5). As already explained, Rule 60.02(5) "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." Holiday, 42 S.W.3d at 94. An

---

[8] The record indicates that Employee retained new counsel in November 2006, less than one year after the settlement.

untimely request under Rule 60.02(1) or (2) may not be asserted under Rule 60.02(5). Wallace, 666 S.W.2d at 67; Holiday, 42 S.W.3d at 94; Henderson v. Kirby, 944 S.W.2d 602, 605 (Tenn. Ct. App. 1996). We hold that the trial court erred in granting Employee's petition under Rule 60.02(5).

## Inherent Authority

Finally, we address the trial court's alternative basis for granting relief—the "inherent authority" of the court:

> And I rely upon the Court's inherent authority to set aside the settlement when it does not comply with the applicable law. And I also find that based on clear and convincing evidence, there's two bases for setting aside; first of all, the Court's inherent authority to do so; and then secondly, based upon 60.02(5), and I realize it was not pled, I'm allowing the petition to be amended to conform to the proof, and 60.02(5) does apply in this case. And it's been established, in my view, by clear and convincing evidence.

In so ruling, the trial court relied upon Dennis v. Erin Truckways, Ltd., 188 S.W.3d 578, 589 (Tenn. 2006).

In Dennis, the employee—who was permanently and totally disabled as a result of a work-related injury—was initially unrepresented by counsel, but hired an attorney after encountering difficulty getting his medical bills paid. Id. at 582. After the employee filed a complaint seeking workers' compensation benefits, an insurance adjuster repeatedly told the employee that he could only obtain 400 weeks of benefits and that a lawyer would take 25% of his recovery. Id. Relying on this egregious misinformation, the employee discharged his attorney before the benefit review conference, at which the mediator neglected to inform the employee that he could qualify for lifetime benefits. Id. at 582-83. Nearly two years after the benefit review conference, the employee filed a petition in the trial court to set aside the settlement, and the trial court granted the petition. Id. at 586. The employer appealed, and this Court heard the appeal. Id.

In Dennis, we affirmed the trial court's grant of relief from the settlement. Id. at 592. In addressing the employer's argument that the trial court erred in setting aside the settlement pursuant to Rule 60.02, we explained:

> Rule 60.02 provides that relief may be had from judgments or orders for such reasons as mistake, excusable neglect, or fraud. The rule also provides, however, that it "does not limit the power of a court to entertain an

independent action to relieve a party from a judgment, order or proceeding .
. . ." Id. We agree with Dennis that we need not analyze whether relief from
the settlement would have been proper under Rule 60.02, because the trial
court did not rely on the rule in setting aside the settlement. Rather, the court
relied on its inherent authority to set aside the settlement where it did not
comply with the applicable law, and we affirm the trial court's exercise of its
discretion.

Dennis, 188 S.W.3d at 589. The Court in Dennis failed to discuss an earlier decision, Jerkins
v. McKinney, 533 S.W.2d 275 (Tenn. 1976), which interpreted the "'savings' provision" of
Rule 60.02. See Black v. Black, 166 S.W.3d 699, 703 (Tenn. 2005) (referring to the
language of Rule 60.02 that "does not limit the power of a court to entertain an independent
action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for
fraud upon the court" as the "'savings provision'").

In Jerkins, the trial court granted a motion for summary judgment in a civil lawsuit in
favor of the plaintiff. The defendant filed a motion for new trial. The trial court denied the
motion, but counsel for the parties did not learn of this action until more than thirty days after
entry of the order, meaning the time for filing an appeal had expired. Jerkins, 533 S.W.2d
at 277. When the trial court learned that the parties had been unaware of the entry of the first
order denying the new trial motion, the trial court entered a second order, which again denied
the motion and also granted thirty days for an appeal. Id. at 278. Counsel for the plaintiff
then advised counsel for the defendant that the plaintiff would not object based on timeliness
should the defendant choose to appeal within thirty days of entry of the second order. Id.
Rather than appealing pursuant to this "waiver," however, the defendant filed two suits to
set aside the judgment pursuant to Rule 60.02. Id. In addition to asking that the judgment
be set aside, the defendant requested a new trial and an injunction against enforcement of the
judgment. Id.

A different trial judge, designated to adjudicate the lawsuits challenging the judgment,
ruled that, under Tennessee Rule of Civil Procedure 60, the defendant had the right to appeal
within thirty days after entry of the second order denying the motion for new trial, that the
defendant still had a right to appeal "by way of 'writ of error,'" and "that absent a showing
of having exhausted his remedies in the underlying action," the defendant had "no right to
maintain" the independent actions. Id.

The defendant appealed, and the Court of Appeals reversed the trial court's judgment
and remanded for further proceedings. This Court granted review and reversed the judgment
of the Court of Appeals. Id. at 282.

In so doing, this Court explained that the defendant had "three options open to him when he discovered, after the time for appeal had run, that an order overruling his motion for new trial had been entered, including: 1) appealing in reliance upon the plaintiff's "waiver of timeliness;" 2) filing a motion for relief under Rule 60.02; or 3) filing "a petition for writ of error." Id. at 280. The Court described the plaintiff's agreement to waive any objection based on timeliness as "merely the voluntary and informal invocation of the benefits of Rule 60.02." Id. The Court agreed with the "general statement of the law" that "where a judgment has been of record for thirty days, the trial judge is without authority to set it aside and re-enter the same for the purpose of allowing an appeal." Id. Nonetheless, the Court emphasized that "the rigidity of this rule was substantially relaxed by the adoption of Rule 60, Tenn. R. Civ. P., which facially provides relief against final judgments." Id. While courts "always had the authority to modify, alter, amend or revoke judgments and decrees before they become final," the "unyielding demands of the old rule of rigidity" applicable to final judgments prompted the adoption of Rule 60. Id.

The Court concluded that the facts of Jerkins justified "invocation of [Rule] 60.02(1) providing relief against a judgment for 'mistake, inadvertence, surprise or excusable neglect." Id. at 281. The Court concluded that the trial court's action in entering a second order denying the motion for new trial "so as to start the time for an appeal running anew was appropriate relief under Rule 60.02(1)," id., and opined that "this was virtually the exclusive remedy" under the circumstances presented in Jerkins. Id. The Court also held that upon becoming aware of the facts and circumstances "indicating a necessity for such relief," the trial court was not required to "await the filing of a formal motion" under Rule 60.02(1) and acted appropriately in sua sponte granting the necessary relief. Id. The Court declined to grant a new trial under Rule 60 because "no attack" was made "on the merits of the judgment" and the only "deficiencies were procedural irregularities." Id. at 282.

The Court then turned its attention to the "more difficult issue" of "whether an independent action was proper under the facts and circumstances presented." Id. at 281. Given the "absence of Tennessee authority," the Court looked to "treatises and cases construing the similar federal rule." Id. The Court stated that "[r]esort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances." Id. (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2868 (1965)). Like the corresponding provision of the federal rule, the Court held that the portion of Rule 60.02 "relating to 'independent action' is 'what had been historically known simply as an independent action in equity to obtain relief from a judgment.'" Id. (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2868 (1965)). To elucidate this portion of Rule 60.02, the Jerkins Court "adopted" the following language from a federal court decision:

Generally, such an independent action must show a recognized ground, such as fraud, accident, mistake or the like, for equitable relief *and that there is no other available or adequate remedy.* It must also appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect, or carelessness. In this type of action, *it is fundamental that equity will not grant relief if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action . . . to open, vacate, modify or otherwise obtain relief against [] the judgment.* The granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge.

533 S.W.2d at 281 (emphasis added) (quoting Winfield Assocs., Inc. v. Stonecipher, 429 F.2d 1087, 1090 (10th Cir. 1970)). Jerkins thus identified three criteria a plaintiff must establish to maintain an independent action: 1) a recognized ground for relief; 2) an absence of "fault, neglect, or carelessness;" and 3) "no other available or adequate remedy." Id.

The Court then applied this tripartite test to the facts in Jerkins and held the independent action inappropriate. The Court explained that, while the defendant had been the "victim of mistake, inadvertence, surprise and excusable neglect of others and was himself free from fault, neglect or carelessness," the defendant had "three complete and adequate remedies" that he failed to pursue, including "a Rule 60.02(1) motion in the underlying suit." Id. at 282. Despite denying relief in Jerkins, the Court cautioned that its decision should not be understood as holding either "that an independent action will never lie" or that "a new trial is inappropriate relief under Rule 60." Id. at 282. In a more recent decision, this Court recognized that "there is no time limit for filing an independent action to set aside a judgment," but again emphasized that such a proceeding may be maintained "'only under unusual and exceptional circumstances' and 'where no other remedy is available or adequate.'" Black, 166 S.W.3d at 703 (quoting Whitaker v. Whirlpool Corp., 32 S.W.3d 222, 229-30 (Tenn. Ct. App. 2000) (citing Jerkins, 533 S.W.2d at 281)).

The principles announced in Jerkins have often been applied to determine the propriety of an independent action collaterally attacking a judgment. Black, 166 S.W.3d at 704 (refusing to grant relief in an independent action because the plaintiff failed to allege extrinsic fraud, a proper ground for relief); Gentry v. Larkin, No. E2011-02402-COA-R3-CV, 2012 WL 2865956, at *5-6 (Tenn. Ct. App. July 13, 2012) (applying Black and Jerkins to deny relief in an independent action because the plaintiff failed to allege extrinsic fraud); Tanner v. Harris, 150 S.W.3d 161, 165-66 (Tenn. Ct. App. 2003) (applying the Jerkins test and granting relief in an independent action), perm. app. denied (Tenn. June 21, 2004); Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc., 86 S.W.3d 543, 558-59 (Tenn. Ct. App. 2001) (applying the Jerkins test and denying relief in an independent action), perm. app.

denied (Tenn. July 15, 2002); Whitaker, 32 S.W.3d at 229-232 (citing Jerkins for the proposition that an independent action may be maintained only under unusual and exceptional circumstances and only where no other remedy is available or adequate and denying relief because the plaintiff failed to prove extrinsic fraud); Jones v. McMurray, No. M2000-01959-COA-R3-CV, 2001 WL 1097052, at *4-5 (Tenn. Ct. App. Sept. 20, 2001) (applying Jerkins and refusing to set aside the judgment because the plaintiff's "'fault, neglect or carelessness'" was the "sole cause for the precarious situation" from which he was seeking relief); Colonial Baking Co. v. Barrett, No. M1999-02276-WC-R3-CV, 2001 WL 263319, at *2 (Tenn. Workers' Comp. Panel Mar. 19, 2001) (citing Jerkins and refusing to grant relief in an independent action because the plaintiff had other available remedies); Tigrett v. Union Planters Nat. Bank, 973 S.W.2d 208, 212 (Tenn. Ct. App. 1997) (citing Jerkins for the proposition that an independent action is proper only under unusual and exceptional circumstances and only where no other remedy is available or adequate and denying relief because the plaintiff failed to prove extrinsic fraud); Schorr v. Schorr, No. 02A01-9409-CH-00217, 1996 WL 148613, at *2 (Tenn. Ct. App. Mar. 29, 1996) (citing Jerkins and stating that an independent action is proper only under unusual and exceptional circumstances, where no other remedy is available or adequate, and denying relief because the plaintiff failed to prove extrinsic fraud); Tudor v. Tudor, 1985 WL 4039, at *4 (Tenn. Ct. App. Dec. 4, 1985) (quoting Jerkins and holding an independent action improper because the party seeking relief failed to show "there was no other adequate remedy and that the situation in which he found himself was not due to his own fault or carelessness"); Brown v. Raines, 611 S.W.2d 594, 597 -598 (Tenn. Ct. App. 1980) (quoting the three-part Jerkins test and denying relief because the plaintiff failed to prove extrinsic fraud); cf. Nobes v. Wallace, No. 01-A-01-9202-CH00070, 1992 WL 245532, at *4 (Tenn. Ct. App. Sept. 30, 1992) (recognizing that Jerkins "held that the plaintiff could not bring his independent action where there were three other complete and adequate remedies available at the time he filed the independent action.").

The Court of Appeals has applied Jerkins and recognized the propriety of an independent action where the plaintiff was free from fault, showed a recognized ground for equitable relief, and lacked alternative remedies. Tanner, 150 S.W.3d at 165. In Tanner, the aggrieved party sought to set aside a general sessions default judgment where he had not been served with the warrant. The Court of Appeals emphasized that an appeal from the denial of his Rule 60 motion would have been futile, since relief under that rule is not available in general sessions court. Id. In this posture, the Court of Appeals recognized that the trial court properly exercised its discretion in granting relief from a final judgment in an independent action. Id. at 166 (citing Jerkins, 533 S.W.2d at 282).

Conversely, in Tip's Package Store, Inc., the Court of Appeals refused to grant relief in an independent action because the defendants "had an adequate remedy available to them

to challenge the denial of their motion seeking to set aside the judgment, if indeed there was error." 86 S.W.3d at 558. In that case, the defendants had moved to intervene in the circuit court following a judgment by that court against their clients, who would be seeking indemnification. Id. Because the motion to intervene was a proper mechanism for setting aside the judgment, the defendants could have appealed the trial court's denial of that motion—but did not. Id. The Court of Appeals concluded that, because the defendants failed to avail themselves of an "available and adequate remedy," they could not collaterally attack the judgment in a subsequent suit. Id. (citing Jerkins, 533 S.W.2d at 282).

In affirming the grant of relief in Dennis, this Court failed to discuss or apply Jerkins. Understandably, then, the trial court in this case did not apply Jerkins when considering the propriety of Employee's independent action seeking relief from the Department-approved settlement, which is legislatively deemed a final judgment. However, Jerkins and its progeny accurately reflect the state of the law in this area. To avoid confusion, we caution that Dennis should not be read as implicitly abrogating Jerkins or authorizing an independent action without satisfaction of the Jerkins test.[9]

Applying Jerkins, we conclude that Employee failed to establish at least two of the three criteria necessary to obtain relief in an independent action collaterally attacking a final judgment. First, it is clear that Employee had other available and adequate remedies. Employee either could have timely sought relief for the alleged mistake pursuant to Rule 60.02(1) or appealed from the Department-approved settlement pursuant to Tennessee Code Annotated section 50-6-206(c)(2). Employee availed himself of neither remedy. Additionally, unlike the petitioner in Jerkins and the employee in Dennis, we cannot conclude that Employee was without fault. The alleged mistake upon which the settlement rested, if any, was Employee's employment status—a factual matter that Employee, as much as anyone, was in a position to know. Employee had retained counsel with whom he could discuss the circumstances of his claim. After the settlement—but within one year—Employee retained new counsel, who could again have sought relief under Rule 60.02(1). No fact in this case supports allowing the trial court to exercise its inherent

---

[9] This opinion should not be read as otherwise limiting the inherent authority of Tennessee trial courts, which we have recognized in a variety of contexts. E.g., State v. Sexton, 368 S.W.3d 371 (Tenn. 2012) (to exclude evidence that would threaten the fairness of the trial process); Blackburn v. Blackburn, 270 S.W.3d 42 (Tenn. 2008) (to enter a divorce decree nunc pro tunc); State v. Reid, 981 S.W.2d 166 (Tenn. 1998) (to adopt appropriate rules of procedure to address an issue of first impression); Ex Parte Chattanooga Bar Ass'n, 330 S.W.2d 337, 340 (Tenn. 1959) (to appoint special commissioners to investigate and inquire into alleged unethical and unlawful practice of law). We note that the circumstances of Dennis, including the egregious misinformation regarding the employee's available legal remedies, the lack of meaningful oversight of the settlement process, the employee's absence of counsel, and the employee's lack of fault, differ substantially from the facts of this case.

authority and consider Employee's petition as an independent action. Accordingly, we reverse the trial court's judgment granting relief based on its inherent authority and dismiss Employee's petition.

## **Conclusion**

The Panel erred in setting aside the Department-approved settlement as non-final based on its conclusion that the SD-1 form was not "fully completed" and in concluding that the benefit review conference process had not been exhausted. The trial court erred in setting aside the Department-approved settlement pursuant to Tennessee Rule of Civil Procedure 60.02(5) and its inherent authority. Accordingly, the judgments of the Panel and the trial court are reversed and Employee's petition is dismissed. Costs of this appeal are taxed to Christopher Furlough and his surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE